IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 3:12-cr-80-01 |
| Plaintiff, | ) |
| | ) **PLEA AGREEMENT** |
| v. | ) |
| | ) |
| ANDREW MICHAEL SPOFFORD, | ) |
| | ) |
| Defendant. | ) |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Lynn C. Jordheim, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, for the District of North Dakota, and Christopher C. Myers, Assistant United States Attorney, defendant, ANDREW MICHAEL SPOFFORD, defendant's attorney, John Goff, agree to the following:

1. Defendant acknowledges the Indictment in this case charges violations of Title 21, United States Code, Sections 331(a), 333(a)(1), 352, 802(32), 812, 813, 841(a)(1), 841(b)(1)(C), and 846, and Title 18, United States Code, Section 2.

2. Defendant has read the charges and defendant's attorney has fully explained the charges to defendant.

3. Defendant fully understands the nature and elements of the charged crimes.

4. Defendant will voluntarily plead guilty to Counts One, Two, Three, Four, and Five of the Indictment.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then defendant acknowledges this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give defendant a right to withdraw defendant's guilty plea.

6. Defendant will plead guilty because defendant is in fact guilty of the charges. In pleading guilty to the Indictment, defendant acknowledges that as to Count One:

From in or about January 2011 and continuously through the date of this Indictment, in the Districts of North Dakota, Minnesota, and elsewhere,

ANDREW MICHAEL SPOFFORD;
CASEY STEVENS ROSEN;
PETER JEVNING HOISTAD;
ALLYSON GABRIELLA DESANTOS; and
STEVEN MITCHELL WILLIAM BUCHER

did knowingly and intentionally combine, conspire, confederate, and agree together with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute the following controlled substance analogues, as defined in 21 U.S.C. § 802(32), knowing the substances were intended for human consumption as provided in 21 U.S.C. § 813:

2

1. N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, which is also known as 2C-C-NBOMe or 25C-NBOMe, is a controlled substance analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance;

2. N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, is a controlled substance analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance;

3. 4-Chloro-2,5-dimethoxy-amphetamine, which is also known as DOC, is a controlled substance analogue of 2,5-Dimethoxy-4-methyl-amphetamine, also known as DOM, a Schedule I controlled substance;

4. 2-(Ethylamino)-2-(3-methoxyphenyl)cyclohexanone, also known as MXE or Methoxetamine, is a controlled substance analogue of N-ethyl-1-phenylcyclohexylamine also known as 3-Eticyclidine or PCE, a Schedule I controlled substance;

5. 6-(2-Aminopropyl)-2,3-dihydrobenzofuran, which is also known as 6-APDB, is a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance.

The distribution of N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, which is also known as 2C-C-NBOMe or 25C-NBOMe, and N-(2-methoxybenzyl)-4-iodo-2,5-

dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, resulted in serious bodily injury and death.

As a further part of this conspiracy, the above-named defendants also did knowingly and intentionally combine, conspire, confederate, and agree together with others, both known and unknown to the grand jury, to possess with intent to distribute and did distribute the following controlled substances: cocaine, a Schedule II controlled substance; marijuana, a Schedule I controlled substance; ecstacy (3,4-methylenedioxy-methamphetamine - MDMA), a Schedule I controlled substance; MDA (3,4-methylenedioxyamphetamine), a Schedule I controlled substance; 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance, and Psilocyn, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 812, 813, 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine,

which is also known as 2C-C-NBOMe or 25C-NBOMe, within the states of North Dakota, Minnesota, and elsewhere;

   2. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, within the states of North Dakota, Minnesota, and elsewhere;

   3. On or about June 11, 2012, the distribution of N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, which is also known as 2C-C-NBOMe or 25C-NBOMe, and N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the death of C.A.B. in Grand Forks, North Dakota;

   4. On or about June 11, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, resulted in serious bodily injury to C.L.J. in Grand Forks, North Dakota;

   5. On or about June 13, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the death of E.R.S. in East Grand Forks, Minnesota;

   6. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a

detectable amount of 4-Chloro-2,5-Dimethoxy-amphetamine, which is also known as DOC. This is a controlled substance analogue of 2,5-Dimethoxy-4-methyl-amphetamine also known as DOM, a Schedule I controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

7. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 6-(2-Aminopropyl)-2,3-dihydrobenzofuran, which is also known as 6-APDB is a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

8. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of Etizolam. The purpose of distributing Etizolam was to counteract any negative effects of the various hallucinogens distributed as part of this conspiracy;

9. It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of marijuana, ecstacy (MDMA), MDA, Psilocyn, and 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, all Schedule I controlled substances, and cocaine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

10. It was further a part of said conspiracy that the defendants and others would and did attempt to conceal their activities;

11. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities;

12. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

13. It was further a part of said conspiracy that the defendants and others would and did distribute controlled substance analogues and controlled substances to juveniles; and

14. Defendant ANDREW MICHAEL SPOFFORD was a leader, organizer, manager, and supervisor in this conspiracy;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

As to Count Two, defendant acknowledges that:

In or about June 2012, in the District of North Dakota,

ANDREW MICHAEL SPOFFORD

did knowingly and intentionally possess with intent to distribute N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, which is also known as 2C-C-NBOMe or 25C-NBOMe, and did distribute N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, both being controlled substance

analogues as defined in 21 U.S.C. § 802(32), knowing the substances were intended for human consumption as provided in 21 U.S.C. § 813, in Grand Forks, North Dakota, and the use of the substances resulted in the death of C.A.B.;

In violation of Title 21, United States Code, Sections 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

As to Count Three, defendant acknowledges that:

In or about June 2012, in the District of North Dakota,

ANDREW MICHAEL SPOFFORD

did knowingly and intentionally distribute N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, a controlled substance analogue as defined in 21 U.S.C. § 802(32), knowing the substance was intended for human consumption as provided in 21 U.S.C. § 813, in Grand Forks, North Dakota, and the use of the substance resulted in serious bodily injury to C.L.J., as defined in 21 U.S.C. § 802(25);

In violation of Title 21, United States Code, Sections 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

As to Count Four, defendant acknowledges that:

In or about June 2012, in the District of North Dakota,

ANDREW MICHAEL SPOFFORD

did knowingly and intentionally possess with the intent to distribute N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, which is also known as 2C-I-NBOMe or 25I-NBOMe, a controlled substance analogue as defined in 21 U.S.C. § 802(32), knowing the substance was intended for human consumption as provided in 21 U.S.C. § 813, in Grand Forks, North Dakota, and the use of the substance resulted in the death of E.R.S.;

In violation of Title 21, United States Code, Sections 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

As to Count Five, defendant acknowledges that:

In or about January 2011 and continuously until the date of this Indictment, in the District of North Dakota, and elsewhere,

ANDREW MICHAEL SPOFFORD

did cause to be introduced and delivered for introduction into interstate commerce from outside of the United States to the State of North Dakota and elsewhere, a misbranded drug, namely, Etizolam, said pills of Etizolam being misbranded within the meaning of:

    a. Title 21, United States Code, Section 352(f)(1), in that their labeling did not bear adequate directions for use; and

    b. Title 21, United States Code, Section 352(f)(2), in that their labeling did not bear adequate warnings;

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(1), and 352, and Title 18, United States Code, Section 2.

7. Defendant understands the charges carry the following maximum penalties:

    <u>COUNT ONE</u>
    Imprisonment: life; 20 year minimum
    Fine: $1,000,000
    Supervised Release: 3 years
    Special Assessment: $100

Defendant agrees to pay the Clerk of United States District Court the $100 special assessment on or before the day of sentencing.

    <u>COUNT TWO</u>
    Imprisonment: life; 20 year minimum
    Fine: $1,000,000
    Supervised Release: 3 years
    Special Assessment: $100

Defendant agrees to pay the Clerk of United States District Court the $100 special assessment on or before the day of sentencing.

    <u>COUNT THREE</u>
    Imprisonment: life; 20 year minimum
    Fine: $1,000,000
    Supervised Release: 3 years
    Special Assessment: $100

Defendant agrees to pay the Clerk of United States District Court the $100 special assessment on or before the day of sentencing.

COUNT FOUR
Imprisonment:       life; 20 year minimum
Fine:               $1,000,000
Supervised Release: 3 years
Special Assessment: $100

Defendant agrees to pay the Clerk of United States District Court the $100 special assessment on or before the day of sentencing.

COUNT FIVE
Imprisonment:       1 year
Fine:               $1,000
Supervised Release:
Special Assessment: $~~100~~ 25

Defendant agrees to pay the Clerk of United States District Court the $100 special assessment on or before the day of sentencing.

8.  Defendant understands that by pleading guilty defendant surrenders rights, including:

(a) The right to a speedy public jury trial and related rights as follow:

(i) A jury would be composed of 12 lay persons selected at random. Defendant and defendant's attorney would help choose the jurors removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed

11

that defendant is presumed innocent and that it could not return a guilty verdict unless it found defendant guilty beyond a reasonable doubt.

(ii) If a trial were held without a jury, then the Judge would find the facts and determine whether defendant was guilty beyond a reasonable doubt.

(iii) At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for defendant refuse to appear voluntarily, defendant can require their attendance through the subpoena power of the Court.

(iv) At trial, defendant has a privilege against self-incrimination; thus, defendant can decline to testify. No inference of guilt can be drawn from defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b) Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask defendant questions about defendant's criminal conduct to ensure that there is a factual basis for defendant's plea.

9. Defendant understands that by pleading guilty defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a), and must consult and take into account the United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 2011) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom defendant is licensed, or with whom defendant does business, of defendant's conviction.

13. The parties agree that the offense level under the Sentencing Guidelines for defendant's conduct is as follows:

Counts One and Two: 38; USSG § 2D1.1(a)(2);

Count Three: 38, USSG § 2D1.1(a)(2);

Count Four: 38, USSG § 2D1.1(a)(2);

Count Five: 6, USSG § 2X5.2;

Combined offense level based on USSG §§ 3D1.1 through 3D1.4 is 41;

+two levels, USSG 3B1.1(c), manager/supervisor;

= 43 TOTAL OFFENSE LEVEL.

14. At sentencing, United States agrees to recommend a two-level downward adjustment for acceptance of responsibility, provided defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)) The United States further agrees to move for an additional one-level downward adjustment for timely notifying the United States of defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b))

15. The parties stipulate and agree, that as of the date of this agreement, the defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should the defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor Probation Office are parties to the Plea Agreement. Neither the Court nor the Probation Office are bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment.(n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17. At sentencing the United States will:

(a) recommend a sentence at the low end of the guideline range, or minimum mandatory, whichever is greater; and

(b) recommend restitution in an amount to be determined at sentencing.

18. Defendant acknowledges and understands that if defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void, at the discretion of the United States, and defendant will face the following consequences: (1) all testimony and other information defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal grand jury, may be used against defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in

those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting defendant for perjury, false statement, or false declaration, if defendant commits such acts in connection with this agreement or otherwise.

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order defendant to make restitution for all loss caused by defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this plea agreement.

21. **Defendant's Waiver of Appeal.** Defendants have a right to appeal their conviction and sentence (Judgment), unless they agree otherwise. Appeals are taken to the United States Court of Appeals for the Eighth Circuit (appellate court), pursuant to Title 18, United States Code, Section 3742(a). The appellate court has ruled that defendants can waive (give up) their right to appeal. Defendants often waive their right

to appeal as part of a plea agreement and in exchange for concessions by the United States. The appellate court will enforce such waivers.

Defendant and defendant's attorney acknowledge they have fully reviewed and fully discussed the record in this case and all issues that may be raised on appeal. They have fully discussed defendant's right of appeal and the consequences of waiver. Defendant has decided to waive any right of appeal, except as may be provided herein.

By signing this agreement, defendant voluntarily waives defendant's right to appeal the Court's Judgment against defendant; and, absent a claim of ineffective assistance of counsel, defendant waives all rights to contest the Judgment in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. Defendant reserves only the right to appeal from a sentence that is greater than the upper limit of the Court-determined Sentencing Guidelines range.

Defendant understands that the United States was motivated by defendant's willingness to waive any right of appeal when the United States chose to offer defendant terms of a plea agreement. In other words, the United States was willing to offer certain terms favorable to defendant in exchange for finality. Defendant understands and agrees this case will be over once defendant has been sentenced by the Court. Defendant agrees that it will be a breach of this agreement if defendant appeals in violation of this agreement. The United States will rely upon defendant's waiver and breach as a basis for dismissal of the appeal. Moreover, defense counsel may reasonably conclude and inform the appellate court that an appeal is wholly frivolous. Defense counsel may then move to

withdraw, citing <u>Anders v. California</u>, 386 U.S.738, 744 (1967), and <u>Smith v. Robbins</u>, 528 U.S. 529 (2000). Defendant agrees an appeal in violation of this agreement should be dismissed.

By signing this Agreement, the defendant further specifically waives defendant's right to seek to withdraw defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this Agreement. The appellate court will enforce such waivers. The defendant agrees that any attempt to withdraw defendant's plea will be denied and any appeal of such denial should be dismissed.

22. The Assistant United States Attorney and attorney for defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

23. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed defendant's constitutional and other rights, including, but not limited to, defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:  LYNN C. JORDHEIM
Attorney for the United States Acting under
Authority Conferred by 28 U.S.C. § 515

Dated: 10/29/12   By: _____
CHRISTOPHER C. MYERS
Assistant United States Attorney

Dated: 10-17-12   _____
ANDREW MICHAEL SPOFFORD
Defendant

Dated: 10-17-12   _____
JOHN GOFF
Attorney for Defendant